## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ALEX LANDRY, individually and on behalf of all other similarly situated current citizens of Illinois and the United States,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-cv-01661-SPM** |
| **POST CONSUMER BRANDS, LLC,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of Defendant Post Consumer Brands, LLC's ("Post's") Motion to Dismiss (Doc. 18) relevant to all counts of Plaintiff Alex Landry's ("Landry's") Complaint. (Doc. 1, Ex. B). Also before the Court is Post's Request for Judicial Notice in Support of its Motion to Dismiss. (Doc. 20). Having been fully informed of the issues presented, Post's Request for Judicial Notice (Doc. 20) is **GRANTED** and its Motion to Dismiss (Doc. 18) is **GRANTED in part and DENIED in part**.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from Landry's Amended Class Action Complaint (Doc. 1, Ex. B), and the Court accepts them as true for the purposes of Post's Motion to Dismiss. Post manufactures and sells Cocoa Pebbles and Fruity

Pebbles throughout the United States. (*Id.*, p. 7). The labels on Post's cereal claim the boxes contain fifteen servings. (*Id.*) A serving of either cereal, according to Post's labels, is one cup. (*Id.*). Landry alleges, however, that Post delivers less than fifteen one-cup servings per box. (*Id.*, p. 11). Specifically, he alleges that both Fruity Pebbles and Cocoa Pebbles weigh more per serving than is advertised on the box. (*Id.*). Landry tested twelve samples from twelve different lots of the cereals to arrive at this conclusion. (*Id.*). Landry alleges that Post intended their consumers to rely on their serving-size representations. (*Id.*). Consumers did not receive the number of one-cup servings Post promised them, for which they paid, and have thus been damaged by the percentage of fewer servings in each box than advertised. (*Id.*, p. 12). Landry states that he and his fellow class members would have either not purchased the cereal or paid less for it had they been aware of Post's misrepresentation. (*Id.*).

Landry, individually and on behalf of all similarly situated citizens of Illinois and the United States, filed a Complaint in the Circuit Court for St. Clair County that was later removed to this Court. (Doc. 1. Ex. B). His amended complaint includes claims for breach of express warranty and implied warranty of merchantability (Counts I and II), deceptive and unfair practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Counts III and IV), violation of the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (Count V), and, in the alternative, unjust enrichment (Count VI). *Id.*

Post responded by filing a Motion to Dismiss rejecting all claims alleged in the Complaint. (Doc. 18). Landry filed a response in opposition (Doc. 31), and Post filed a Reply in support of its position. (Doc. 35).

### APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the

complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Because the instant suit was filed in Illinois and both parties have applied Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012).

JUDICIAL NOTICE

Post filed a motion requesting the Court to take judicial notice of (1) a U.S. Food and Drug Administration ("FDA") Guidance Document and (2) an unpublished order from the Circuit Court of the Twentieth Judicial Circuit St. Clair County, Illinois. (Doc. 20). First, the Court has the authority "to take judicial notice of government websites." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) (citing FED. R. EVID. 201(c)(1)). Second, the Court has the authority to take judicial notice of matters of public record, including state court decisions, court filings, and documents from state court proceedings. *See J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021). Accordingly, Post's Request for Judicial Notice (Doc. 20) is **GRANTED**.

ANALYSIS

## I.    Fraud

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." FED. R. CIV. P 9(b). This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs*

*Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Thus, pursuant to Rule 9(b), a plaintiff must "describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). This heightened Rule 9(b) standard applies to fraud claims, including deceptive conduct claims under the ICFA and IUDTPA.

### A. ICFA

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), prohibits "unfair or deceptive acts or practices, including ... deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment ... in the conduct of any trade or commerce." 815 ILL. COMP. STAT. 505/1, *et seq*. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). A claim brought under the ICFA requires: (1) a deceptive act or practice by the defendant; (2) that the defendant intended that the plaintiff rely on the deception; (3) that the deceptive act occurred in a course of conduct involving trade or commerce; and, (4) actual damages to the plaintiff; (5) that were proximately caused by the deceptive act. *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *DeBouse v. Bayer AG*,

922 N.E.2d 309, 313 (Ill. 2009)). The statute allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but "the two categories have different pleading standards." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id*. This means as a practical matter that she must identify the "who, what, when, where, and how" of the alleged fraud. *Id*. On the other hand, Rule 9(b)'s heightened pleading standard does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the statute. *Id*. at 739. Landry's complaint alleges both deceptive and unfair practices; the court will analyze each in turn.

The first inquiry under the ICFA for a deceptive practice claim is whether there was a deceptive act or practice. *See Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010). Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). It is not enough to allege that the product misled a particular plaintiff, rather the statement must be "likely to deceive a reasonable consumer." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972–73 (7th Cir. 2020) (emphasis added). In other words, there must be a "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474 (7th Cir. 2020) (internal quotations and citation omitted).

Post makes six arguments contesting that Landry has successfully pleaded a deceptive practice claim under the ICFA. First, Post argues that Landry has not plausibly alleged that the cereal products are not properly measured or labeled before shipping and handling, particularly because Landry's methods of weighing the cereal were unreliable. (Doc. 19, pp. 8–10). Landry responds by stating that the reliability of the weighting is a question about the reliability of the evidence, improper for the Court to resolve at this stage. (Doc. 31, pp. 6–11). Second, Post argues that consumers rarely follow the recommended serving size with exact precision; rather, they would be more apt to prepare the amount of cereal they want to consume, which will vary by consumer and bear little relation to the labeled servings or serving size. (Doc. 19, pp. 10–12). Landry argues that how a consumer uses the product is irrelevant to the question whether consumers care about receiving the quantity of product that the label says it contains. (Doc. 31, pp. 13–15). Third, Post argues that even if a consumer precisely follows the recommended serving size, Landry fails to assert any factual allegations explaining how a reasonable consumer would understand the cereal's labeling, including whether (or why) reasonable consumers would similarly ignore (or disbelieve) Post's disclosure that a serving size weighed 36 grams.  (Doc. 19, p. 12). Landry argues that there is nothing implausible about a consumer knowing about shipping shrinkage while simultaneously believing that Post's label representations remain accurate. (Doc. 31, pp. 15–17). Fourth, Post argues that Landry's assertion that he identified the "correct weight of a serving size" through his "preliminary testing" belies common sense, making his subjective interpretation of the serving size

representations unreasonable and fanciful. (Doc. 19, pp. 12–13). Landry argues that he has not "interpreted" the serving size representations; he takes them at face value, and Post offers no rationale to support its conclusion that doing so is nonsensical, unreasonable and fanciful. (Doc. 31, p. 17). Fourth, Post argues that Landry fails to plausibly allege any facts explaining how or why a reasonable consumer would adopt Landry's own subjective definition of the "correct" serving size based on kitchen-table calculations, as opposed to those determined by the manufacturer and listed on the cereal's packaging. (Doc. 19, pp. 13–16). Landry argues that it is entirely reasonable for a consumer to rely on the serving-size representation on the packaging, and that this representation should not vary from a consumer's own measurement. (Doc. 31, pp. 17–19). Sixth, Post argues that Landry failed to allege that Post relied on its representations. (Doc. 19, pp. 16–17). Landry argues that it did allege intent adequately, as intent need only be alleged generally in a fraud action under Federal Rule of Civil Procedure 9(b). (Doc. 31, pp. 19–20).

Post's arguments are unpersuasive. Post's first five arguments all suffer from the same fatal flaw: they are fact-intensive and would require the Court to prematurely weigh the evidence. Landry's "assertion that [he] and others attach importance to the size of a package is enough for now to indicate that a 'reasonable consumer does so too. [He] therefore did enough to plead a deceptive act." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). The Seventh Circuit favors a practical and fact-intensive approach to consumer behavior to assess deceptive-advertising claims. *Bell*, 982 F.3d at 478. Often, whether a statement is

deceptive is an issue of fact. *Id.* at 479. Similarly, assessing likelihood of consumer confusion is a question of fact. *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 948 (N.D. Ill. 2009). Post's arguments fundamentally concern factual questions, which are inappropriate at the motion to dismiss stage of the lawsuit. As to the sixth argument, Landry clearly states that the misrepresentation was intentional. (*See* Doc. 1, Ex. B, pp. 12–13). In fraud cases where a heightened pleading standard is required, Federal Rule of Civil Procedure 9(b) permits "intent, knowledge, and other condition of a person's mind [to] be alleged generally." FED. R. CIV. P. 9(b). Therefore, Landry has satisfied the heightened pleading standard for cases involving fraud.

Post also alleges that Landry fails to allege the deceptive practice with requisite particularity. (Doc. 19, p. 17). The Court disagrees. The complaint's allegations describe the "who, what, how, where, and when" of the alleged fraud with particularity. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). The "who" and the "what" is that Fruity Pebbles and Cocoa Pebbles, Post's products, weigh more per serving than is advertised on the box. The "how" is that a reasonable consumer would believe that there are more servings in the box than is advertised. The "where" is the state of Illinois, and the "when" is the five years preceding the filing of the complaint. The Court determines that Landry has pleaded a deceptive practices claim under the ICFA with sufficient particularity.

Turning to the unfair practices claim, Illinois courts look to three considerations to ascertain whether conduct is unfair under the ICFA: "(1) whether

the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. App. Ct. 2002).

Post argues that because Landry failed to plausibly allege that Post "violate[d] statutory or administrative rules establishing a certain standard of conduct," he has not sufficiently alleged unfair conduct under the ICFA. (Doc. 19, p. 19) (citing *Acosta-Aguayo v. Walgreen Co.*, 2023 WL 2333300, at *5 (N.D. Ill. Mar. 2, 2023)). However, such a violation is not strictly necessary to establish an unfair practice claim ("However, a practice *may* be unfair under the ICFA when it "offends public policy," which *can* occur where the practice violates statutory or administrative rules establishing a certain standard of conduct." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 716 (N.D. Ill. 2018)) (emphasis added). *Saika* contains permissive language rather than mandatory language, indicating that such a violation is not required to find unfairness. The Illinois Court of Appeals corroborates this interpretation. *Robinson*, 775 N.E.2d at 961 (A practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.") Thus, it is not strictly necessary for a practice to violate statutory or administrative rules to be considered unfair. Second, Post argues that Landry fails to explain how Post's product labeling activity is sufficiently immoral or unethical to state a plausible claim for unfair conduct under the ICFA. (Doc. 19, p. 19). However, "[a]n unfair-practices claim has no fraud element and therefore is not subject to a heightened pleading standard." *Vanzant*, 934 F.3d at 739. Landry's allegations of

unfair practices meet the federal notice-pleading standards because they claim that Post's labeling practices were immoral and unethical when they misrepresented the serving size on its boxes. (Doc. 1, Ex. B, p. 19). At this stage, Landry's allegations of unfair practices meet the federal notice-pleading standards because they present allegations that Post "engaged in unfair conduct and aver[ ] facts that, if proven, make relief more than merely speculative." *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008).

Post also argues that Landry failed to plausibly plead that he suffered actual harm, the fourth element of a deceptive practices claim and the third element of an unfair practices claim under the ICFA. (Doc. 19, pp. 4–7, 19–20). Post argues that because Landry received the amount of cereal as advertised on the box, he cannot have suffered harm under the ICFA. (*Id.*). As a starting point, the Food and Drug Administration takes the position that "the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100). Therefore, the fact that that the labels on the cereal boxes portray an accurate net weight does not automatically relieve Post of liability. Courts have determined that the plaintiff must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). In *Benson*, the plaintiff alleged that although the boxes accurately disclosed the weight of the chocolate within (seven ounces) and the number of pieces

in each box (ascertainable by multiplying the serving size times the number of servings per container), the boxes were emptier than each one had expected due to the amount of slack-fill in each box. 944 F.3d at 644. The Court rejected the plaintiff's argument that they would not have purchased the candy if they had known the amount of slack-fill, and therefore that they were entitled to damages in the amount of the percentage of the purchase price equal to the percentage of nonfunctional slack-fill. *Id.* "Benson never said that the chocolates they received were worth less than the $9.99 they paid for them, or that they could have obtained a better price elsewhere. That is fatal to their effort to show pecuniary loss." *Id.*; *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 3866507, at *4 (N.D. Ill. July 25, 2013) (plaintiff who "would not have bought the shirts" absent deceptive advertising did not suffer actual damages without alleging that he "paid more than the actual value for the shirts.") *aff'd*, 761 F.3d 732, 739–40 (7th Cir. 2014). However, the instant case is fundamentally different because Landry pleaded that he would have either refrained from purchasing the cereal or paid substantially less for each box. (Doc. 1, Ex. B, p. 12). In short, Landry *did* allege that the boxes of cereal were worth less than what he paid for them. This distinguishes the instant case from both *Benson* and *Camasta*. Post also directs the Court to *Hassard v. Aldi, Inc.*, 2023-LA-0087 (Ill. Cir. Ct. filed Jan. 26, 2023), as instructive. However, as part of its analysis, the Court in *Hassard* relied on the fact that the actual weight of a single serving of oats varied tremendously when weighed at oral argument. *Id.* at 7–8. Assuming *arguendo* that the court was correct in its assessment, the weight of one serving of the product is a

factual question that may not be resolved at the pleading stage. Moreover, the *Hassard* court stated that the plaintiff does not explain how the consumer was harmed in that case. *Id.* at 8. But that is not true here. Landry alleges that a serving of each cereal weighed *more* than was advertised, meaning that he did not receive the benefit of the bargain, and accordingly would have paid *less* for the cereal or would have foregone purchasing it at all. (Doc. 1, Ex. B, pp. 18–19). Post also argues that "Plaintiff does not—and cannot—plausibly allege that Post sets its prices for the Cereal based on the number of servings—as opposed to the net weight of the Cereal or some other factor—or that Post drew attention to the number of 1-cup servings per container." (Doc. 35, p. 7). Even if the Court were to prematurely resolve this factual question in favor of Post, it doesn't change the critical fact that Landry alleges that he relied on the serving size representation; put another way, whether Post priced its cereal or intended to convey that it priced its cereal based on the net weight instead of the serving size representation is immaterial to the specific deceptive practice alleged here, which is that the weight per serving size was more than was represented on the box. Therefore, Landry has sufficiently pleaded the harm element of his ICFA claim. As all the elements of both his deceptive and unfair practice claims were pleaded sufficiently, Landry's ICFA claim survives Post's motion to dismiss.

### B. IUDTPA

The IUDTPA is a codification of the Illinois common law of unfair competition. *See generally Nat'l Football League Props., Inc. v. Consumer Enters., Inc.*, 327 N.E.2d 242, 247 (Ill. App. Ct. 1975) (providing the historical underpinnings of the UDTPA),

*cert. denied*, 423 U.S. 1018 (1975). Under the UDTPA, any person likely to be damaged by the deceptive trade practice of another may be granted relief. 815 ILL. COMP. STAT. 510/3. However, damages cannot be recovered under the UDTPA. *Glazewski v. Coronet Ins. Co.*, 483 N.E.2d 1263, 1267 (Ill. 1985). Nevertheless, a consumer may obtain an injunction thereunder if she can show she is likely to be damaged in the future by a defendant's conduct. *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1337 (Ill. App. Ct. 1995) (citations omitted); *see also* 815 ILL. COMP. STAT. 510/3 ("A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief . . . ."). Likelihood of future harm, aside from being an element of Article III standing to seek injunctive relief, *see Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)), "is an element of liability" of a UDTPA claim. *See ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (citing *Glazewski*, 483 N.E.2d at 1267 (dismissing a UDTPA claim because the plaintiffs "kn[e]w the problems associated with [what they purchased], and, armed with that knowledge, c[ould] avoid it . . . . [and were] not persons who [were] likely to be damaged by [the] defendants' conduct in the future" (quotation marks omitted))). The rationale of the above cases applies here as well. Even assuming *arguendo* that Post's conduct is unlawful, Landry can simply avoid purchasing the cereal in question. Accordingly, he cannot prove he will suffer future harm, defeating his claim under the IUDTPA. Therefore, his IUDTPA claim must be dismissed.

## II.    Breach of Warranties

Under Illinois law, a description of goods can create an express warranty: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 810 ILL. COMP. STAT. 5/2-313. With this statutory overlay, the express warranty is a "creature of contract." *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 838 (Ill. 1988). To adequately plead a breach of express warranty, a plaintiff must allege: (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty. *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *2 (N.D. Ill. June 16, 2017). Under Article 2 of the Uniform Commercial Code ("UCC"), as adopted by Illinois, to state a claim for breach of the implied warranty of merchantability, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. 810 ILL. COMP. STAT. 5/2-314; *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021).

Post makes five arguments as to why Landry's warranty claims should fail. First, Post argues that Landry fails to allege that he suffered damages. (Doc. 19, pp. 4–7). However, the Court has already determined that Landry has adequate pled

damages (*see supra* Section I.A), so the Court need not revisit this argument. Second, Post argues that no reasonable consumer would be misled by the packaging. (Doc. 19, p. 21). This is a factual question, which is, as stated above, not to be resolved at this stage of the litigation. What is critical is that Landry alleged that a reasonable consumer would be misled. Third, Post argues that Landry was not in privity with Post. (*Id.*, pp. 21–22). "In general, because an express warranty 'is a creature of contract,' a party must have privity to the contract before bringing a breach of express warranty claim." *Canadian Pac. Ry. Co. v. Williams–Hayward Protective Coatings*, 2005 WL 782698, at *15 (N.D. Ill. April 6, 2005). An exception applies if a manufacturer "expressly warranted its goods to the ultimate consumers and this was the basis for the bargain and relied upon by plaintiffs." *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 957 (N.D. Ill. 2007). Thus, to state a viable claim for breach of express warranty, a plaintiff must plead that the seller made an affirmation of fact that was part of the basis of the bargain between the parties. *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 865 N.E.2d 334, 340 (Ill. 2007). And "[i]n the context of a buyer purchasing a product from a dealer and not the manufacturer, Illinois courts have concluded that brochures, documents, and advertisements may be the basis of express warranty." *Canadian Pac. Ry. Co.*, 2005 WL 782698, at *15. Here, the information Post provided directly to the buyer prior to purchase were the labels on the box where Post promised fifteen one-cup servings in each box of cereal. (Doc. 1, Ex. B, pp. 16–17). Therefore, the lack of privity cannot defeat Landry's claim for breach of warranties. Fourth, Post argues that Landry's implied warranty claim fails

because the product was clearly fit for consumption. (Doc. 19, p. 22). Landry appears to have not responded to this contention. The Court refrains from determining whether, as a factual matter, the cereal was clearly fit for consumption but agrees that Landry has failed to adequately state a claim for a breach of an implied warranty. To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege "(1) a sale of goods, (2) by a merchant of those goods, and (3) the goods were not of merchantable quality." *Brandt v. Boston Scientific Corp.*, 792 N.E.2d 296, 299 (Ill. 2003). To be merchantable, the goods must "pass without objection in the trade under the contract description" and must be "fit for the ordinary purposes for which such goods are used." 810 ILL. COMP. STAT. 5/2-314(2). A plaintiff's "allegation that the goods were not merchantable at the time of sale should be supported by an allegation of what the ordinary purpose of the good is." *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 726 (N.D. Ill. 2021) (citation omitted). In his complaint, Landry merely recites the elements of the claim without providing supporting factual allegations. (*See* Doc. 1, p. 17). There are no facts, for example, alleging that the product was not merchantable at the time of sale, or any allegations about the ordinary purpose of the product. Landry's claim amounts to "legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," and thus are not entitled to the presumption of truth on a Rule 12(b)(6) motion. *Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 786 (N.D. Ill. 2023) (citing *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014)). Fifth and finally, Post argues that Landry failed to point to an "express promise" by Post that

was false, thus defeating his express warranty claim. (Doc. 35, p. 12). This is untrue because Landry pleads that the express promise was that there were fifteen one-cup of servings in each cereal box. (Doc. 1, Ex. B, p. 16). Whether there was an express promise is a factual dispute that cannot be resolved at the motion to dismiss stage. Landry has sufficiently pleaded a claim for a breach of an express warranty, but not for a breach of the implied warranty of merchantability.

## III.    Unjust Enrichment

In Illinois, unjust enrichment is an equitable remedy that is available when no adequate remedy at law exists. *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005). However, there is no stand-alone claim for unjust enrichment. *See All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971 (Ill. App. Ct. 1995; *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349 (Ill. App. Ct. 1985). Instead, Illinois courts describe it as "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence." *Charles Hester*, 648 N.E.2d at 349. The request for relief based on unjust enrichment is therefore "tied to the fate of the claim under the [ICFA]." *Vanzant*, 934 F.3d at 740. Because Landry stated a claim under the ICFA, he also stated a claim for unjust enrichment. Therefore, the unjust enrichment claim survives.

## CLASS CERTIFICATION

Post argues that Landry's proposed nationwide class should be dismissed for two reasons. First, Post argues that Landry "lacks standing for out-of-state classes based upon the alleged experiences of other unidentified customers." (Doc. 19, p. 30).

However, the entire purpose of a class action is "to represent the interests of class members, not just the representative's own interests." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D. Ill. 2021). Our sister court in this circuit has represented Post's argument. *See Bohen v. ConAgra Brands, Inc.*, 2024 WL 1254128, at *5 (N.D. Ill. Mar. 25, 2024) ("By [Defendant's] logic, if a plaintiff can only seek to represent individuals within their own state, there can never be a nationwide or multi-state class action unless there is a representative from each state.") The Court agrees with the *Bohen* court's reasoning here. The proper framing of Post's contention is whether Plaintiffs can serve as class representatives for a multi-state class, including the proposed Illinois subclass, when they have not purchased Post products in other states. *See, e.g., Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (recharacterizing defendant's standing claim as a Rule 23 challenge). "[A]s long as the named plaintiffs have [constitutional] standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence' under Article III." *Muir v. Nature's Bounty (DE), Inc.*, 2018 WL 3647115, at *7 (N.D. Ill. Aug. 1, 2018) (quoting *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018)). Post's argument raises a predominance question, which is premature, and not to be adjudicated until the class certification stage.

Second, Post argues that Landry's class claim should be stricken because it would fail under Rule 23(b)(3)'s predominance requirement due to the multiple,

material conflicts among states' laws that would render the class unmanageable and subject litigants to conflicting legal rules. (Doc. 19, p. 30). This is also a premature argument. Generally, Federal Rule of Civil Procedure 23(c)(1)(A) states that "at any early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." And a court "need not delay a ruling on class certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). Courts in the Seventh Circuit have determined that if the challenge to class certification involves a factual dispute, then discovery is necessary and striking class certification at the pleading stage is premature. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (citations omitted). Conversely, if a defendant's challenge to class certification is based on an issue of law, it is proper to decide the class certification question at the pleading stage. *Kubilius v. Barilla Am., Inc.*, No. 18 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019) (citations omitted). However, in *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), in the context of a dispute of the suitability of the plaintiff to represent a class due to the variation in states' laws, the Seventh Circuit distinguished the standing inquiry from "the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Id.* at 677. In addition, courts "in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable." *Flaherty v. Clinique Lab'ys LLC*, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021);

*see also Joseph v. TGI Friday's, Inc.*, 2022 WL 17251277, at *9–10 (N.D. Ill. Nov. 28, 2022) (same); *Rawson v. ALDI, Inc.*, 2022 WL 1556395, at *5 (N.D. Ill. May 17, 2022) ("The prevailing view, particularly recently, is that the issue is best framed through the class-certification lens, not standing.") Therefore, this Court, in accordance with Seventh Circuit precedent and the decisions of other courts within this Circuit, agrees that the predominance question is best suited for a determination at the class certification stage, and thus declines to make a Rule 23 determination at this time.

### CONCLUSION

For the reasons set forth above, Defendant Post Consumer Brands, LLC's Request to Take Judicial Notice (Doc. 20) is **GRANTED** and its Motion to Dismiss (Doc. 18) is **GRANTED in part and DENIED in part.** Counts II and V of Plaintiff Alex Landry's Complaint (Doc. 1, Ex. B) are **DISMISSED with prejudice**. Counts I, III-IV, and VI survive dismissal and shall proceed into class discovery. This Court will set a scheduling conference via a separate order.

**IT IS SO ORDERED.**

**DATED:  March 24, 2025**

                                                    *s/ Stephen P. McGlynn*
                                                    **STEPHEN P. McGLYNN**
                                                    **U.S. District Judge**